## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

STACHIA CAMPBELL                                                    PLAINTIFF

V.                          NO. 5:18CV00090 BRW-JTR

NANCY A. BERRYHILL,
**Deputy Commissioner for Operations,**
**performing the duties and functions not reserved**
**to the Commissioner of Social Security**                          DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Stachia Campbell ("Campbell"), applied for disability benefits on August 2, 2015, alleging a disability onset date of January 1, 1996. (Tr. at 20). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 29). The Appeals Council denied her request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, the Commissioner's decision should be affirmed.

## II.  <u>**The Commissioner's Decision**</u>:

The ALJ found that Campbell had not engaged in substantial gainful activity since the alleged onset date of January 1, 1996. (Tr. at 22). At Step Two, the ALJ found that Campbell has the following severe impairments: degenerative disc disease, seizure disorder, and anxiety disorder. *Id.*

After finding that Campbell's impairment did not meet or equal a listed impairment (Tr. at 23), the ALJ determined that Campbell had the residual functional capacity ("RFC") to perform the full range of light work, except that: (1) she could not frequently balance, or climb ladders, ropes or scaffolds; (2) she could have no exposure to hazards; (3) she could perform work where interpersonal contact is incidental to the work performed, complexity of tasks can be learned by demonstration or repetition within 30 days, with few variables and little judgment; and (4) supervision required is simple, direct, and concrete. (Tr. at 25).

The ALJ found that Campbell had no past relevant work. (Tr. at 28). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Campbell's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including work as a cashier II and an usher. (Tr. at 29). Thus, the ALJ concluded that Campbell was

not disabled. *Id.*

## III.   **Discussion**:

A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.    Campbell's Arguments on Appeal

Campbell contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the RFC did not fully incorporate her mental limitations, and that the Appeals Council should have considered new evidence as a basis to remand the case. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Campbell suffered from anxiety and symptoms of bipolar disorder. She was never hospitalized for her mental illness but received out-patient mental health counseling at Living Hope Southeast, LLC ("Living Hope"), along with medication management. Five months after the ALJ issued his decision, Thanh Nguyen, M.D., a psychiatrist, completed a checkbox form referred to as a Medical Source Statement. This form, dated November 7, 2017, was submitted directly to the Appeals Council. (Tr. at 8-12). According to the boxes checked on this form, Dr. Nguyen believed Campbell had severe limitations in several work-related areas due to her mental functioning. *Id.*[1] However, these restrictions did *not* align with the providers' own notes. A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v.*

---

[1] It is worth noting that the statement indicated that Campbell would be able to carry out simple instructions. (Tr. at 11).

*Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

According to her medical records, Campbell had episodes of crying, racing thoughts, memory problems, and anxiety. But, in August 2015, she reported to Ms. Kathryn Kidwell, a medical professional at Living Hope, that she had a fairly positive mood, and was doing better, with more good days than bad. (Tr. at 405-406). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992). According to Ms. Kidwell's notes, Campbell was kind, polite, and respectful. (Tr. at 405-406).

On October 1, 2015, Ms. Kidwell noted that a lack of compliance by Campbell with her treatment was leading to a lack of progress. (Tr. at 493). She noted that Campbell was not taking psychiatric medications, even though she previously reported that Wellbutrin and Xanax had helped her. (Tr. at 499). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Campbell confirmed on October 14, 2015 that she was open to medication to help her mood and was working toward her goals. (Tr. t 485-486). On October 22, 2015, she was having mood swings and anxiety, but she was eating and sleeping well. (Tr. at 481). On December 1, 2015, Campbell's mood was stable on Depakote. (Tr. at 489).

In early 2016, Ms. Kidwell noted that Campbell was fired from nearly all of

her past jobs, a fact Campbell reiterates in her claim that she cannot work. (Tr. at 513). But Ms. Kidwell also said that Campbell had not been regularly attending therapy, which could have accounted for her impaired memory and mood swings. (Tr. at 514-517 and 561). A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). On July 26, 2016, when she presented for therapy, Campbell was able to articulate her needs, was open to learning new behaviors, and expressed a desire to change. (Tr. at 524). She had no issues with thought content and there were no apparent memory issues. (Tr. at 526). At a few more visits in 2016, Campbell continued to work toward her goals and agreed with her husband to work on her marriage, which had been a source of anxiety. (Tr. at 535-543). On December 20, 2016, Campbell presented with a fairly positive mood with no thoughts of self-harm. (Tr. at 543). She was "much better overall." *Id.* Again, her improvement in condition weakens Campbell's claims that she cannot work.

In January and February 2017, Campbell had fairly good mood with organized and coherent thought content. (Tr. at 545-550). She had fair to good insight and judgment, and she was able to exercise and clean her home. *Id.* However, she was not taking her medication as prescribed. (Tr. at 547). Again in March, she admitted to not picking up her prescribed medication, which had led to more depression. (Tr.

at 551-553). In spite of non-compliance, at a doctor's visit in April 2017, Campbell was doing fairly well overall. (Tr. at 554).

Two non-examining psychiatric consultants opined that Campbell would be capable of unskilled work with simple tasks and direct supervision. (Tr. at 72, 89). This level of work lined up with treatment notes from Living Hope. Campbell showed progress, but she admitted to not taking medication or attending therapy as prescribed. Her providers said that this non-compliance contributed to intermittent regression. Because Campbell reported that Wellbutrin, Xanax, and Depakote helped her, her unwillingness to take those medications undermines her disability claim.

A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ properly evaluated the medical evidence, and even credited Campbell's difficulties, in spite of her non-compliance, by limiting her to simple, unskilled work. Thus, the Court concludes that the RFC properly

incorporated Campbell's demonstrated mental limitations.

Finally, the Appeals Council properly discounted the cursory medical source statement from the Living Hope treatment providers. The extreme limitations reflected on that check box form did not square with Campbell's motivation toward goals and exhibited progress, when properly medicated. Thus, this form did not provide a sufficient evidentiary basis for the Appeals Council to remand Campbell's claim.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that the case be DISMISSED, with prejudice.

DATED this 30th day of January, 2019.

_____

UNITED STATES MAGISTRATE JUDGE